IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BARBARA HARMON,

                          Plaintiff,                          OPINION & ORDER

        v.                                                    13-cv-686-jdp

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                          Defendant.

---

Plaintiff Barbara Harmon seeks judicial review of a final decision of the Commissioner of Social Security finding her not disabled within the meaning of the Social Security Act. Harmon asserts that remand is necessary because the Administrative Law Judge (ALJ): (1) failed to incorporate her non-severe limitations into the residual functional capacity assessment (RFC) and hypothetical questions to the vocational expert (VE) at her hearing; (2) relied on flawed VE testimony and failed to resolve conflicts between the vocational testimony and the Dictionary of Occupational Titles; (3) failed to afford appropriate weight to a treating physician's opinion; (4) failed to make complete and accurate findings as to whether Harmon met or medically equaled a listing in the List of Impairments; and (5) failed to adequately assess Harmon's credibility. The court will remand the case for further proceedings.

BACKGROUND

Harmon has suffered from back pain and joint pain for years. She has undergone multiple surgeries to address her pain, but she continues to suffer. Specifically, Harmon has degenerative disc disease in her back, and degenerative joint disease in both her right shoulder and her right knee. She also has pain in her right thigh from a severed nerve that was the result of melanoma resection surgery. She suffers from depression and anxiety and has a reported

history of fibromyalgia. The medical evidence of these ailments in the record includes the opinion of her treating doctor, David Onsrud, DO, as well as the test results and treatment notes from her medical care over the years. Harmon worked as an administrative assistant, customer representative, bakery worker, and cashier until her pain became too intense and she stopped working in 2009, at the age of 55.

Harmon applied for disability insurance benefits and supplemental security insurance in 2010, alleging a disability onset date of November 12, 2009. Her applications were denied initially and upon reconsideration. She requested and received a hearing before ALJ Arthur J. Schneider on May 15, 2012. At the hearing, Harmon appeared with her attorney. Medical expert Larry L. Larrabee, PhD, and vocational expert Stephen H. Porter also testified. On June 8, 2012, the ALJ issued an unfavorable decision, finding that Harmon was not disabled. R. 14-25.

The ALJ found that Harmon met the insured status requirements through December 31, 2014, and that she has not engaged in substantial gainful activity since her alleged onset date, November 12, 2009. He further found that Harmon suffered from the following severe impairments: degenerative disc disease, degenerative joint disease of the right shoulder following arthroscopic surgery, and degenerative joint disease of the right knee following arthroscopic surgery. He found that Harmon's severed nerve in her thigh caused no more than minimal work-related limitations and that even if those minimal limitations were included in her RFC, Harmon would still be able to perform sedentary work with restrictions. R. 17. Similarly, the ALJ assessed Harmon's mental impairments and found that they caused her no more than minimal limitations and were non-severe. *Id.* The ALJ next compared Harmon's physical impairments to two of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1: Listing 1.02 (major dysfunction of a joint) and Listing 1.04 (disorders of the spine). He

determined that although Harmon had severe physical impairments, her medical records do not show any nerve root compression, sensory or reflex loss, spinal arachnoiditis, lumbar spinal stenosis, or gross anatomical deformity, and so she did not meet or medically equal either listing. R. 19-20.

The ALJ then determined that Harmon had the residual functional capacity to perform sedentary work with the following limitations: she can sit for only 45 minutes at a time before needing to stand or walk for 15 minutes; she is limited to frequent overhead reaching; she is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling; and she must avoid exposure to unprotected heights and dangerous machinery. R. 20. In explaining this assessment, the ALJ accorded different weight to the various medical opinions in the record. He found that even with the restrictions noted above, Harmon would be able to perform her past work as either an administrative assistant or as a customer service representative. Therefore, the ALJ found that Harmon was not disabled.

Harmon appealed the decision to the Appeals Council, which denied her request on August 16, 2013, making the ALJ's decision the final determination of the Commissioner. R. 1-7. On October 1, 2013, Harmon timely sought judicial review in this court under the Social Security Act, 42 U.S.C. § 405(g).

ANALYSIS

Harmon argues that the ALJ erred by: (1) failing to incorporate her non-severe limitations into the RFC and hypothetical questions to the VE; (2) relying on flawed VE testimony and failing to resolve conflicts between the vocational testimony and the Dictionary of Occupational Titles; (3) failing to afford appropriate weight to the treating physician's opinion; (4) failing to make complete and accurate findings as to whether Harmon met or

medically equaled a listing in the List of Impairments; and (5) failing to adequately assess Harmon's credibility.

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). However, a reviewing "court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

## A. Harmon's non-severe mental limitations

Harmon argues that the ALJ should have analyzed how her non-severe mental limitations impact her ability to perform past relevant work at step four of his analysis. 20 C.F.R. § 404.1523; *see also Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) ("[T]he combined effects of the applicant's impairments must be considered, including impairments that considered one by one are not disabling.") (citations omitted). As the ALJ noted, Harmon suffers from depression and anxiety, which he found to cause "mild limitation" in her daily living activities, social functioning, and concentration, persistence, or pace. R. 17-18. But the ALJ did not mention these mental limitations in Harmon's RFC or in the "narrative discussion

describing how the evidence supports each conclusion" of the RFC. Social Security Ruling (SSR) 96-8p. This was error.

Dr. Larrabee, a psychologist who testified at the hearing, opined that Harmon was moderately limited in concentration, persistence, or pace and that her limitations would preclude skilled work. The ALJ gave this portion of his opinion only "little weight" because Dr. Larrabee attributed the limitation to Harmon's "pain issue" instead of to her depression or anxiety. R. 19. The ALJ also stated that Dr. Larrabee's opinion was not entitled to more weight because he is not a medical doctor and the ALJ felt that the opinion was based on Harmon's subjective report. Although the ALJ is free to determine how much weight to accord each medical opinion, he must give good reasons for the weight he decides to accord them. *Campbell v. Astrue*, 627 F.3d 299, 306-08 (7th Cir. 2010). The reasons that the ALJ gave here do not pass muster. Physical pain can be a source of mental limitation. *Simila v. Astrue*, 573 F.3d 503, 521-22 (7th Cir. 2009) (concluding that an ALJ's reasoning adequately accounted for moderate limitations with concentration, persistence, and pace that stemmed from chronic pain). Further, a psychologist is competent to opine on mental limitations that stem from physical pain. *See Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004).

Notwithstanding the omission of mental limitations in the RFC, the ALJ asked the VE hypothetical questions about job opportunities for someone with Harmon's limitations who "would only be available for simple, routine, and repetitive work" and could "understand, carry out and remember simple instructions." R. 92-93. That verbiage is often used to describe someone with significant limitations in concentration, persistence, or pace. But the ALJ rejected Dr. Larrabee's conclusion that Harmon was moderately limited in that area and instead found only mild limitation. On remand, the ALJ must adequately explain why he finds certain limitations credible and why he excludes others. Muddling the issue with boilerplate language is

not helpful. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."). The ALJ's boilerplate language failed to explain how doing only simple, routine, and repetitive work would accommodate Harmon's specific challenges or how the work expected of an administrative assistant or customer sales representative is simple, routine, and repetitive.

**B. VE testimony and the Dictionary of Occupational Titles**

The ALJ's failure to explain how administrative assistants do simple, routine, and repetitive work is problematic for another reason. Harmon argues that the ALJ failed to reconcile discrepancies about that work between the VE's testimony at the hearing and the Dictionary of Occupational Titles. Social Security Ruling 00–4p requires ALJs to affirmatively ask whether the VE's testimony conflicts with the Dictionary of Occupational Titles (DOT), and explain how any conflict was resolved. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).

At the hearing, the VE testified about available jobs for individuals with various limitations. R. 88-98. Using shorthand, the VE testified that "even though the administrative assistant would be an SVP [specific vocational preparation score] of 6 with simple, routine, and [re]petitive [work], and I would still consider the secretary administrative assistant and customer service as being relevant." R. 93. Translated, this statement means that an administrative assistant position is considered a skilled job, which would require at least six months of training. But the VE described the job as sedentary, R. 90, and testified that it could still be an option for someone like Harmon if it were limited to only simple, routine, and repetitive tasks (which itself is code for accommodating someone with limitations in

concentration, persistence or pace). The coded reference to mental limitations is important, because skilled work often requires increased capacity for concentration and persistence. SSA-POMS: DI 25020.010. Therein lies the discrepancy.

The ALJ had an affirmative duty to explain how he resolved the conflict between the VE's identification of skilled work with an SVP score of six and his testimony limiting that work to simple, routine, and repetitive tasks. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). He failed to explain the discrepancy. On remand, the ALJ should ensure that the VE's testimony matches Harmon's limitations.

## C.  Treating source opinion

Harmon alleges that the ALJ failed to appropriately weigh the opinion of Dr. Onsrud, Harmon's treating physician. Dr. Onsrud opined that Harmon could stand or walk for two hours during an eight-hour workday and sit for four hours during an eight-hour workday with an at-will sit-stand option and the ability to lie down one to two times per day. R. 448-50. The ALJ discredited this position and instead found that Harmon could sit for only 45 minutes at a time before needing to stand or walk for 15 minutes. R. 20. He did not incorporate any limitation on the total amount of time that Harmon can sit, stand, or walk within an eight-hour workday in the RFC.

An ALJ must give controlling weight to the opinions of a treating source unless the opinion is unsupported by medical evidence or is inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c). If an ALJ declines to give controlling weight to a treating source opinion, he must determine what lesser weight it deserves based on a number of factors and he must explain his reasoning. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); § 404.1527(c). Here, the ALJ declined to give Dr. Onsrud's opinion controlling weight and instead accorded it only "some weight." R. 23. He gave both good and bad reasons for doing so.

The ALJ explained that, despite the treating relationship, Dr. Onsrud formed his conclusions over 18 months before the hearing and Harmon had not been physically evaluated since that time. The ALJ also found that Dr. Onsrud's opinion was "not entirely supported by the medical evidence" because there was "no evidence" that Harmon could sit for only four hours per day and because she herself reported that she could sit for varying durations. *Id.* Lastly, the ALJ observed that Dr. Onsrud's sitting limitations appeared to be "based upon [Harmon's] subjective reports" instead of objective findings, and that Dr. Onsrud's opinion of Harmon's need to miss work and lie down during the day was "speculative." *Id.*

The ALJ's first reason, that Dr. Onsrud's opinion was too remote to be credited, is a bad reason. Dr. Onsrud formed the opinion on October 14, 2010, nearly a year after Harmon's onset date. Further, to be found disabled, Harmon must demonstrate that her disabling impairment began before her insured status expires and has lasted or can be expected to last at least one year. 42 U.S.C. § 423(a)(1)(A). A medical opinion that demonstrates impairment approximately one year after Harmon's onset date (and well before her insurance expired) would seem to be quite relevant. Certainly, it is not a good reason to discount the opinion.

The ALJ's second reason, that Dr. Onsrud's opinion was not entirely supported by the medical evidence, was a good reason. He specifically cited inconsistencies within Harmon's own reported limitations, upon which Dr. Onsrud relied to form his opinion. On remand, the ALJ may still find that Dr. Onsrud's opinion is not well-supported by the medical evidence or that it is inconsistent with the record. However, even if the ALJ declines to accord it controlling weight, he must still analyze the factors in 20 C.F.R. § 404.1527 to determine what weight to assign the opinion and he must explain his reasoning. It would be helpful, for example, for the ALJ to refer to the specific objective evidence that undermines Dr. Onsrud's opinion and explain why he finds that evidence compelling.

**D. Listed Impairments**

Harmon argues that the ALJ erred by finding that she did not meet or medically equal any listing in the List of Impairments. If Harmon did meet or medically equal a listing, she would be presumptively eligible for benefits. 20 C.F.R. § 404.1520(d). She argues that she meets Listing 1.04A, which describes spinal disorders and requires medical evidence of specific criteria, including nerve root compression. 20 C.F.R. Part 404, Subpart P, Appendix 1. For support, Harmon points to medical evidence of each requirement and she emphasizes Dr. Onsrud's opinion that she medically equals the listing, even if she does not meet it. R. 430-31.

Harmon bears the burden of proving that she meets or medically equals a listing and that her impairments satisfy the specified criteria. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). But the ALJ must "offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citations omitted). For his analysis of Listing 1.04, the ALJ stated that "there is no evidence of nerve root compression accompanied by sensory or reflex loss, or of spinal arachnoiditis confirmed by operative note or surgical pathology report, nor is there evidence of lumbar spinal stenosis resulting in pseudoclaudiation, as required by listing 1.04 sections A, B, and C, respectively." R. 19-20.

Harmon specifically argues that she meets section A of the listing, which requires she have a disorder of the spine (including degenerative disc disease) that compromises either the nerve root or the spinal cord with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ agreed that Harmon suffered degenerative disc disease as a severe impairment. R. 16. Harmon further points to medical evidence of

9

radiculopathy (nerve root compression)[1] and permanent nerve damage with leg weakness and a decreased range of motion. R. 486-88. She also points to evidence of her pain and reflex loss, as well as to a positive straight-leg raising test. *Id.* But the ALJ does not mention this evidence. His conclusory statement that "there is no evidence of nerve root compression accompanied by sensory or reflex loss" does not square with the record and does not provide an adequate explanation for dismissing evidence that suggests that Harmon has the required nerve damage and symptoms. R. 19.

On remand, the ALJ will have another opportunity to analyze not only whether Harmon meets the listing, but also whether she medically equals it. Dr. Onsrud's opinion that Harmon medically equals the listing is particularly relevant to that point and the ALJ is encouraged to explain how that opinion factors into his analysis. *Minnick*, 775 F.3d at 936 (explaining the insufficiency of a Listing 1.04 analysis in which "the ALJ never sought an expert's opinion as to whether any of the evidence could support a finding of equivalency"); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (collecting authority).

## E.  Credibility

Lastly, Harmon argues that the ALJ erred in finding that she was not fully credible. "An ALJ is in the best position to determine the credibility of witnesses," and the court will uphold his credibility determination unless it was patently wrong. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (providing that judicial review of an ALJ's credibility determination is deferential and upheld unless it is patently wrong). The ALJ's decision is not patently wrong if he "consider[ed] the entire case

---

[1] *See Schomas v. Colvin*, 732 F.3d 702, 704 (7th Cir. 2013) ("Lumbar radiculopathy is a painful condition of the nerve roots in the lower spine, often caused by disc herniation or compression.").

record and g[a]ve specific reasons for the weight given to the individual's statements." *Simila*, 573 F.3d at 517 (internal quotations omitted).

The ALJ noted that the record contained Harmon's complaints of increased pain, but he also cited specific objective medical records that did not reflect any deterioration. R. 20-22. He further identified gaps in Harmon's treatment for various impairments, and instances in which she did not report pain at her medical appointments. *Id.* The ALJ found her testimony to be "somewhat credible but not completely supported by the overall record." R. 21. Based on his reasoning and explanation, the court does not find his determination that Harmon was "somewhat credible" to be patently wrong. However, reconsideration of other aspects of the case and reevaluation of the medical evidence may affect the credibility determination. Therefore, the ALJ is encouraged to revisit the credibility determination on remand.

ORDER

IT IS ORDERED that:

1. The decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff Barbara Harmon's application for disability insurance benefits and supplemental security income is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

2. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered March 26, 2015.

BY THE COURT:

/s/
JAMES D. PETERSON
District Judge

11